# 25-599-cr

## United States Court of Appeals

**FOR THE SECOND CIRCUIT**

UNITED STATES OF AMERICA,
*Appellee,*

-vs-

JESSICA STUART,
*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

**OPENING BRIEF FOR DEFENDANT-APPELLANT JESSICA STUART**

TERENCE S. WARD
*Federal Defender, District of Connecticut*
10 Columbus Boulevard, 6th Floor
Hartford, CT 06106
(860) 493-6260

TO BE ARGUED BY: JOHN J. STICKNEY
*Assistant Federal Defender*

# TABLE OF CONTENTS


TABLE OF CONTENTS .......... *i*

TABLE OF AUTHORITIES .......... *ii*

JURISDICTIONAL STATEMENT .......... *v*

STATEMENT OF THE ISSUES .......... *vi*

STANDARD OF REVIEW .......... *vii*

STATEMENT OF FACTS .......... 1

SUMMARY OF THE ARGUMENT .......... 8

ARGUMENT .......... 10

I. The special condition of supervised release allowing a Probation officer to notify any third party of any undefined risk from Ms. Stuart is overly broad and not allowed in light of *Boles* .......... 10

II. The issue here is ripe for decision, both because of the wording of the condition and the upcoming date of Ms. Stuart's release .......... 14

CONCLUSION .......... 15

CERTIFICATIONS

# TABLE OF AUTHORITIES

**Cases**

*United States v. Birkedahl*,
973 F.3d 49 (2d Cir. 2020) .......... 14-15

*United States v. Boles*,
914 F.3d 95 (2d Cir. 2019) .......... 8, 10, 11, 13

*United States v. Brown*,
402 F.3d 133 (2d Cir. 2005) .......... *vii*

*United States v. Cabral*,
926 F.3d 687 (10th Cir. 2019) .......... 11-12

*United* States *v. Evans*,
883 F.3d 1154 (9th Cir. 2018) .......... 12

*United States v. Forde*,
664 F.3d 1219 (8th Cir. 2012) .......... 13

*United States v. Hull*,
893 F.3d 1221 (10th Cir. 2018) .......... 12-13

*United States v. Janis*,
995 F.3d 647 (8th Cir.), *cert. denied*, —— U.S. ——,
142 S. Ct. 483, 211 L.Ed.2d 293 (2021) .......... 12-13, 14

*United States v. Johnson*,
446 F.3d 272 (2d Cir. 2006) .......... *vii*

*United States v. Lifshitz*,
369 F.3d 173 (2d Cir. 2004) .......... *vii*

*United States v. MacMillen*,
544 F.3d 71 (2d Cir. 2008) .......... *vii*

*United States v. Mejia-Banegas*,
32 F.4th 450 (5th Cir. 2022) ............................................................ 12

*United States v. Mercado*,
2d Cir. Case No. 25-206 ...............................................................2-3

*United States v. Parisi*,
821 F.3d 343 (2d Cir. 2016) ............................................................ *vii*

*United States v. Peterson*,
248 F.3d 79 (2d Cir. 2001) .............................................................. 10

*United States v. Reeves*,
591 F.3d 77 (2d Cir. 2010) .............................................................. *vii*

*United States v. Robertson*,
948 F.3d 912 (8th Cir.), *cert. denied*, —— U.S. ——,
141 S. Ct. 298 L.Ed.2d 51 (2020) .................................................... 13

*United States v. Sims*,
92 F.4th 115 (2d Cir. 2024) ..............................................................*vi*

*United States v. Traficante*,
966 F.3d 99 (2d Cir. 2020) ...................................................... 8, 14, 15

*United States v. Villafane-Lozada*,
819 F. App'x 58 (2d Cir. 2020)......................................................... 15

**Statutes**

18 U.S.C. § 1028 ......................................................................................... 1

18 U.S.C. § 1347 ......................................................................................... 1

18 U.S.C. § 3231 .........................................................................................*v*

18 U.S.C. § 3583 .......................................................................................*vi*

18 U.S.C. § 3742 .......................................................................................*v*

28 U.S.C. § 1291 .......... *v*

**Other Authorities**

Federal Rule of Criminal Procedure 32.1 .......... *passim*

U.S.S.G. § 5D1.3 .......... 7

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Connecticut (Nagala, J.) had subject matter jurisdiction under 18 U.S.C. § 3231. On February 26, 2025, the District Court revoked Ms. Stuart's extant term of supervised release, sentenced her to ten months in prison for violating the terms of her supervision, and instituted a new term of supervision. A 160. Ms. Stuart filed a timely notice of appeal on March 12, 2025. A 165. This Court has appellate jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

This appeal deals with only a single issue – the propriety of a special condition of supervised release for Jessica Stuart. Although it may seem like a small matter, it raises the possibility of the Probation Office being improperly delegated the power to determine who qualifies as a third party to whom Ms. Stuart may present a risk; moreover, it gives the Probation Office authorization to decide what and how to disclose the information to those it deems a third party.

> If the court decides a term of supervised release is appropriate, it must also determine what conditions should apply. … The court is given "wide latitude" to impose "special conditions," or any conditions it deems appropriate. … While courts have considerable discretion to impose special conditions as they see fit, that discretion is not unlimited. The limits, shaped in large part by 18 U.S.C. § 3583(d) and the Sentencing Guidelines, U.S.S.G. § 5D1.3(b), are vital for safeguarding the rights of criminal defendants and have been explained to varying degrees by our precedent.

*United States v. Sims*, 92 F.4th 115, 123 (2d Cir. 2024).

The District Court's imposition of a special condition that allows the Probation Office discretion to determine to whom and to what extent they can share information about Ms. Stuart's criminal history and past criminal conduct constitutes an impermissible delegation of authority to Probation. Because Ms. Stuart will be back in the community on or soon after the probable date of disposition of this case, it is ripe for decision now.

## **STANDARD OF REVIEW**

The Court reviews "the propriety of a supervised release condition, and modifications to the condition, for abuse of discretion." *United States v. Parisi*, 821 F.3d 343 (2d Cir. 2016) (quoting *United States v. Brown*, 402 F.3d 133, 136 (2d Cir. 2005)) (internal quotation marks omitted). In reviewing supervised release conditions imposed by a district court, issues of law are reviewed *de novo*. *United States v. Johnson*, 446 F.3d 272, 277 (2d Cir. 2006); *United States v. Lifshitz*, 369 F.3d 173, 178 (2d Cir. 2004).

"'A district court retains wide latitude in imposing conditions of supervised release,' *United States v. MacMillen*, 544 F.3d 71, 74 (2d Cir.2008), and therefore we subject the conditions themselves to 'an abuse of discretion standard, where any error of law constitutes an abuse of discretion.' *Johnson*, 446 F.3d at 277." *United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010).

# United States Court of Appeals

**FOR THE SECOND CIRCUIT**

UNITED STATES OF AMERICA,
*Appellee,*

-vs-

JESSICA STUART,
*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

## STATEMENT OF FACTS

On June 2, 2021, Jessica Stuart waived indictment and pled guilty to one count of Health Care Fraud in violation of 18 U.S.C. § 1347 and one count of Using False Identification in violation of 18 U.S.C. §§ 1028(a)(7), (c)(3)(A), and (b)(1)(D). A 5, Plea Agreement, Doc. No. 10. The gravamen of the complaint was that she, in her role as a counselor, had submitted claims for Medicaid reimbursement for applied behavioral analysis services that were invalid because she did not possess the required qualifications to deliver or bill for such services, and that to get around that lack of credentials, she used the credentials of another person. A 5, Information, Doc. No. 7.

On October 15, 2021, Judge Jeffrey A. Meyer sentenced Ms. Stuart to 27 months in prison on each count, to run concurrently, and three years of supervised release. A 9, Judgment, Doc. No. 46. She was also ordered to pay restitution in the amount of $339,561.41. *Id.* Ms. Stuart appealed her sentence, but counsel filed an Anders brief, noting that that Ms. Stuart had waived her right to appeal in her plea bargain. The Second Circuit granted the motion to withdraw made in the Anders brief and dismissed the appeal. The panel did note that:

> Although we have granted the motions, we remind both defense counsel and the Government of their obligation to address any component of a judgment not "unambiguously" covered by an appeal waiver. ... Here, the appeal waiver did not unambiguously cover Appellant's supervised release conditions, which should therefore have been addressed in the briefs. Nevertheless, we have independently examined the record and conclude that there are no non-frivolous challenges to those conditions

that could be raised on appeal. A 11, Mandate, Doc. No. 60.

Ms. Stuart completed her sentence, and on December 1, 2023, her term of supervision began. On September 6, 2024, the Probation Office filed a Form 12N, which included information about "numerous incidents of noncompliance with the conditions of release," including moving residences without notifying Probation, failing to notify Probation of job changes, missing ordered restitution payments, and leasing a new car. A 11, Doc. No. 62.

On January 6, 2025, Ms. Stuart was notified of a state warrant for her arrest for charges of defrauding an individual residing at the care facility at which Ms. Stuart had worked. She subsequently turned herself in on January 12, 2025, and she was charged with illegal use of the resident's SNAP benefits card and released on bond. She did not notify probation within the required 72 hours of her conversation or interactions with the police. A 15, Doc. No. 103. Judge Sarala V. Nagala issued a summons for Ms. Stuart to appear on January 24, 2025, which was reset to January 23, 2025. In preparation for that hearing, the government filed a motion for detention pending future proceedings. A 12, Doc. No. 74. The defense countered with a notice of a recent case in the District of Connecticut, *United States v. Mercado*, in which Judge Stefan R.

Underhill had held that courts do not have authority to detain persons facing allegations of violation of supervised release.[1]

Two hearings on the issue of detention were held on January 23 and 27, at which Ms. Stuart was ordered detained. A 13-15, Orders, Doc. Nos. 86, 96. At the latter of the two bond hearings the government produced evidence they claimed showed additional noncompliance by Ms. Stuart, including collecting unemployment benefits while actually being employed and padding her time sheet to boost her pay.

At the January 27 bond hearing, counsel for Ms. Stuart said, "Any potential employer, as a condition, she would be open to third-party disclosure of her criminal history." A 22. Later in the same hearing the government asserted that there were three separate frauds they were concerned with: "One was taking a card for SNAP that she wasn't authorized to and then spending at Price Chopper. One was to make false statements repeatedly to the Department of Labor. And the other one was falsely inflating the hours that she has worked." A 27. Government counsel repeated: "So, again, this underlies the government's concern about putting Ms. Stuart out in the public without sufficient and very stringent guardrails, because she has this history of defrauding and taking advantage of people that she comes into contact with." A 28.

The government decided to move for revocation, citing three specific alleged violations: The alleged misuse of a victim's SNAP benefits card; the alleged receipt of

[1] The government is currently appealing Judge Underhill's holding in the *Mercado* case, No. 25-206.

unemployment benefits when Ms. Stuart was actually employed; and the non-reporting to Probation of information about her contact with police. A final revocation report was filed, and a revocation hearing was held on February 26, 2025. At that hearing, Ms. Stuart admitted to the third allegation, but not the first two. A 88. The government produced various documents regarding the first two items, and the Court found by a preponderance of the evidence that Ms. Stuart had violated her conditions of release on all three counts and revoked her supervised release. A 98-99.

In the end, Judge Nagala sentenced Ms. Stuart to ten months in prison, and imposed a new 24-month term of supervised release. In addition, Judge Nagala imposed several new special conditions for the new term of supervised release, including:

> 12. The U.S. Probation Office is authorized to notify third parties, to whom you may present a risk including employers and potential employers, of your criminal history and past criminal conduct. The probation officer is authorized to obtain employment information from any employer, including job application and payment records. You must execute any releases necessary for your employer to release this information to Probation.

A 164.

Defense objected to the condition as it failed to explain who would be notified and what was meant by her "criminal history and past criminal conduct":

> The third-party notification, that is incredibly I think useful for the court in making sure that she is notifying potential employers of her criminal history. I would object to the character and personal history notification

> just because I think that's so objective -- or I should say subjective, that I would worry that that would kind of cross the boundary of inappropriate. Again, I don't -- I am not criticizing probation. I understand. But I would object to that as being overly -- greater than necessary to achieve the purposes of the supervised release conditions, but I understand the need to report that she has a criminal history, and I do think that would go towards the court's concern for the community.

A 105-106.

The Court clarified the objection:

> THE COURT: So just on these supervised release conditions, is that the only objection you would have to the proposed --
>
> MR. STICKNEY: That was the only objection that we had is specifically in that one, I would object for the third-party notification so far as it's talking about personal history and characteristics I believe is how it's worded.

*Id.*

The government did not object to that limitation:

> As for the additional conditions, we certainly have no objection to it. I wouldn't even have an objection to the removal, as Attorney Stickney proposes, of removing her personal history and characteristics. I think the main thing is really her criminal history.

A 131-132.

When asked about the breadth of the notification condition, the Probation Office responded:

> The reason that's there is to cushion us from not saying something that we wouldn't otherwise be authorized to state. In the event that the employer or a third party has more questions, if they would like to have an open discussion with us, of course the individual is always welcome to be with us when we have those conversations with the employer, or can be around.

> It's more about just the verification of making sure that the employer is fully aware of who they've hired and who this person is and that probation is working with them, and that there is this set of eyes on them as well.

A 136.

They followed up by noting that without the condition, they would only be able to notify an employer of the existence of a conviction, not "what were the facts or what happened" (in the words of the Court). Later, the Court suggested limiting the group who could be informed to persons "to whom Ms. Stuart may present a risk, including employers and potential employers, of Ms. Stuart's criminal history and past criminal conduct." A 142. Defense counsel asked if the condition could be limited to employers (including potential employers) and persons she lived with, and the court declined to set such a limit:

> I understand your point. I think the category of potential people that your proposal would not cover would be for instance if she's starting her own business and treating children or other patients and so she doesn't have an -- it's not an employer. It's not someone she lives with, but it is people to whom she could potentially pose a risk.
>
> We do trust probation to not make this notification when it's not necessary. And as Attorney Huang said, no one's -- it's in no one's interest for Ms. Stuart's professional opportunities to be torpedoed or derailed by a notification. At the same time, I think it's important to balance the public protection here.
>
> So although there is some ambiguity in the language of to whom Ms. Stuart may present a risk, I trust that the probation office will use good judgment in determining who those people are. So I appreciate the point, though. I think it was well taken.

A 143.

The order of revocation was filed on March 5, 2025. A 160. Ms. Stuart timely filed a notice of appeal on March 12, 2025. A 165.

## SUMMARY OF THE ARGUMENT

### I. The special condition of supervised release allowing a Probation officer to notify any third party of any undefined risk from Ms. Stuart is overly broad and not allowed in light of *Boles*.

The Second Circuit has repeatedly held that open-ended grants of authority for the Probation Office to notify third parties of a supervisee's criminal history or other characteristics is an impermissible delegation of authority. It is only in cases such as a *United States v. Traficante*, 966 F.3d 99, 105–07 (2d Cir. 2020), where the Court made clear the decision to require notification to a particular employer was left in the hands of the Court itself, that such notifications are allowed. Here, there is no such safeguard, as the Court explicitly said, it "trust[s] probation to not make this notification when it's not necessary."

### II. The issue here is ripe for decision, both because of the wording of the condition and the upcoming date of Ms. Stuart's release.

This case can also be distinguished from *Traficante* because in that case, an objection to the risk notification was found to be unripe for decision, as there was no actual decision by the court to require a specific notification. Any objection to such a decision could be made by the defense at the proceedings needed to impose a specific notification, a safeguard that is not present here. As the condition stands, Probation will have the authority to decide on and implement notifications as of the first day of

supervision, so the issue is very much ripe for decision now (especially as Ms. Stuart is likely to complete her prison term on or before the date this case can be resolved).

## ARGUMENT

### I. The special condition of supervised release allowing a Probation officer to notify any third party of any undefined risk from Ms. Stuart is overly broad and not allowed in light of *Boles*.

In *United States v. Boles*, 914 F.3d 95 (2d Cir. 2019), the Second Circuit vacated a so-called "notice of risk" condition of supervised release:

> If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

The panel hearing the appeal, relying on *United States v. Peterson*, 248 F.3d 79 (2d Cir. 2001), found that the risk notification requirement was overbroad:

> Because the condition at issue here extends to warning employers of risk and gives the probation office unfettered discretion with respect to the notification requirement, we agree with Boles that the condition is largely indistinguishable from the one we struck down in *Peterson*. Accordingly, we vacate the risk condition and remand to the district court to clarify the scope of the "risk" condition.

*United States v. Boles*, 914 F.3d 95, 112 (2d Cir. 2019).

There are two significant differences between the conditions that were struck down in *Boles* (and *Peterson*) and the one in this case. First, the *Boles* condition only authorized Probation to direct the supervisee to inform the employer of the supervisee's past conviction. Here, the Probation Office is authorized to do so directly. Second, the

notification here encompasses the "personal convictions and past criminal conduct" of the supervisee, instead of just "the risk" (an otherwise undefined category).

Those two changes in no way rescue the condition in this case from the vagueness that was its doom in *Boles*. If anything, they make the condition even less acceptable. First, the condition allows Probation *itself* to inform the employer or other person, which deprives the supervisee of control over the timing, framing, scope, and tone of the information. Second, the substance of the notification is changed from "the risk" to "your criminal history and past criminal conduct."

The Second Circuit is not alone in holding that vaguely worded risk notification conditions are improper. In *United States v. Cabral*, 926 F.3d 687, 698–99 (10th Cir. 2019), the Tenth Circuit focused on the wide discretion given to Probation to decide on such notifications:

> Similarly, Mr. Cabral's probation officer might order him to warn an employer or prospective employer about a perceived risk unrelated to the offense of conviction—relying, as the probation officer reasonably might, on the district court's emphatic refusal to "cabin" the condition to "things that are temporally current as of" Mr. Cabral's conviction. ... This could be an impermissible occupational restriction, depending upon the circumstances. *See Mike*, 632 F.3d at 698 (striking down third-party notification condition to the extent it "requires [defendant] to notify potential employers ... about his criminal convictions" because "such notification constitutes an occupational restriction and the court did not make the findings required by law"); *see also* U.S.S.G. § 5F1.5(a)(1)–(2) (allowing occupational restrictions only where district court makes specific findings linking defendant's occupation to "the conduct relevant to the offense of conviction" and establishing that such a restriction is "reasonably necessary to protect the public"). And we have repeatedly held that occupational

> restrictions implicate liberty interests. *See, e.g.*, *Stidham v. Peace Officer Standards And Training*, 265 F.3d 1144, 1153 (10th Cir. 2001).

*See also United* States *v. Evans*, 883 F.3d 1154, 1163–64 (9th Cir. 2018) ("Evans has several convictions for being a felon in possession of a firearm; must he disclose that there is a risk he may have a gun? … If he goes to a bank in order to open a savings account and meets with a bank employee, must he disclose that he might have a gun? He has no way of knowing.").

This view is not unanimous, however. In *United States v. Mejia-Banegas*, 32 F.4th 450, 452 (5th Cir. 2022), the Fifth Circuit recently held that:

> The risk-notification condition does not impermissibly delegate the court's judicial authority to the probation officer. Under the risk-notification condition, the probation officer does not unilaterally decide whether the defendant is subject to the condition. Rather, the risk-notification condition only allows the probation officer to direct when, where, and to whom the defendant must give notice.

Similarly, the Eighth Circuit upheld a similar Condition against delegation challenge because there was "nothing in the record to show the district court disclaimed ultimate authority over [the defendant's] supervision." *United States v. Janis*, 995 F.3d 647, 653 (8th Cir.), cert. denied, —— U.S. ——, 142 S. Ct. 483, 211 L.Ed.2d 293 (2021). Note that in *Janis*, because the notification requirement is passed to the defendant for them to inform an employer, the panel decided that there is time for clarification: "because the probation officer will identify and communicate the risk to the supervisee before they have a duty to inform another person of that risk, *see United States v. Hull*, 893

F.3d 1221, 1223-34 (10th Cir. 2018) (upholding a similar condition of supervised release). Moreover, if there is genuine confusion about what the condition requires, a supervisee "may ask questions of his probation officer, who is statutorily required to instruct [him] ... as to the conditions specified by the sentencing court." *Janis*, 995 F.3d at 653 (citing *United States v. Robertson*, 948 F.3d 912, 920 (8th Cir.), *cert. denied*, –— U.S. ——, 141 S. Ct. 298, 208 L.Ed.2d 51 (2020) and *United States v. Forde*, 664 F.3d 1219, 1224 (8th Cir. 2012)).

The change in wording from the *Boles* condition to the present one, from "personal history and characteristics" to "your criminal history and past criminal conduct" does not make this concern any less salient. Bearing in mind the wide scope and often intense personal detail included in many Pre-Sentence Reports, the scope of what a Probation Officer might choose to reveal is broad indeed. Additionally, giving the Probation Officer sole discretion in determining who qualifies as "third parties, to whom [Ms. Stuart] may pose a risk" runs afoul of this Court's holding in *Boles* and would make this condition questionable even in other circuits that permit notification where the supervisee has time to seek clarification or object before the court.

Here, Probation is empowered to act without notification to the Court, much less a new finding or order by the Court. Those concerns alone are enough to require vacatur of Special Condition 12.

## II. The issue here is ripe for decision, both because of the wording of the condition and the upcoming date of Ms. Stuart's release.

In *United States v. Traficante*, 966 F.3d 99, 105–07 (2d Cir. 2020), the Second Circuit held that a challenge to a risk notification condition of supervised release was unripe, but it did so on grounds that are not present here which mirrors the facts in *Janis*. Specifically, the condition at issue in *Traficante* empowered a notification to a third party if and only if the district court made a new finding that notification was required, which meant that any notification would be an exercise of the court's power after a review of the specific facts, not a decision on the part of Probation. "[T]he supposed delegation is conditioned on the district court finding, during Traficante's term of supervised release, that he poses a risk of committing further crimes against another person. That might not occur. Second, even if it does, the district court still might directly order Traficante to notify the at-risk individual, or alternatively, order the probation officer to require Traficante to so notify the potential victims." *Id.* at 106–07.

Some courts have held, independently of the mechanisms of action of a condition, that conditions that are not due to be at issue for a long time due to the length of imprisonment a defendant faces are inherently unripe. *See, e.g.*, *United States v. Birkedahl*, 973 F.3d 49, 56 (2d Cir. 2020) ("Though Birkedahl is serving a relatively short sentence of 24 months, his supervised release term nevertheless will not start for

nearly a year."); *United States v. Villafane-Lozada*, 819 F. App'x 58, 59–60 (2d Cir. 2020) (noting that under *Traficante* there would need to be a post-release hearing about the notification issue, and that at that hearing the defendant would be able to raise objections to the notification).

Here, Ms. Stuart's term of imprisonment is due to be completed on October 31, 2025.[2] That is only four months away, and given the normal timelines for a government brief, a possible reply, and holding of oral arguments, and the panel's consideration of the issues, she may well be released before this appeal is decided (or if not will only be a few weeks or even days from release).

The time to decide this issue is therefore now.

## CONCLUSION

For the foregoing reasons, this Court should vacate Special Condition 12 from the District Court's Order.

[2] *See* Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited June 30, 2025).

Dated: July 9, 2025

Respectfully submitted,

TERENCE S. WARD

FEDERAL DEFENDER
DISTRICT OF CONNECTICUT

*/s/ John J. Stickney*
Assistant Federal Defender

*Attorney for Defendant-Appellant*
*Jessica Stuart*

## CERTIFICATIONS

The undersigned counsel certifies that this brief complies with the type-volume limitations set forth by Local Rule 32.1(a)(4)(A), in that there are 3,950 words in this brief. The undersigned counsel further certifies that the foregoing has been served on counsel for all parties via the Court's CM/ECF system on the date reflected on the case docket.

*/s/ John J. Stickney*
Assistant Federal Defender